PAUL A. BONIN, Judge.
11 Gerald Boudreaux died of lung cancer. His survivors sued several entities and their insurers claiming that Mr. Bou-dreaux’s exposure to asbestos at worksites caused or significantly contributed to his disease. Dr. Gerald E. Liuzza, a pathologist, was proposed by the plaintiffs as an expert witness to establish the causative link between the asbestos exposure and the disease.
Trinity Industries, Inc., one of the defendants, provoked a Daubert-Foret hearing to challenge, specifically, the methodology employed by Dr. Liuzza in arriving at his opinion; Its insurers, Continental Insurance Company, Hartford Accident and Indemnity Company, and Certain Underwriters at Lloyd’s London, joined in and adopted Trinity’s two motions. The trial judge excluded Dr. Liuzza’s proposed testimony. Then, because the exclusion of Dr, Liuzza’s testimony meant that the plaintiffs were .unable to establish at trial an essential element of their claim, the trial judge granted summary judgment to Trinity and its insurers and dismissed the Boudreaux family members’ lawsuit against them with prejudice.
I ¿The parties all agree that the correctness of the ruling on the defendants’ motion for summary judgment is dependent upon our disposition of the- trial judge’s action in excluding Dr. Liuzza’s testimony. We review that ruling, under an abuse-of-discretion standard which, in the absence of the trial judge’s misapplication of the law or a clearly erroneous view of. the facts, is highly deferential to the trial judge’s evidentiary ruling.
The Boudreaux family members, as the proponents of Dr. Liuzza’s expert testimony, bear the burden of proving that the methodology employed by the proposed expert is generally accepted in the appropriate or relevant scientific community. See State v. Hampton, 15-1222, p. 17 (La.App. 4 Cir. 12/23/15), 183 So.3d 769, 779, writ denied, 16-0124 (La.3/14/16), 189 So.3d 1073; Wingfield v. State ex rel. Dept. of Transp. & Dev., 01-2668, p. 10 (La.App. 1 Cir. 11/8/02), 835 So.2d 785, 797. With the proponents’ burden of proof in mind, and in the absence of any legal error or gross factual error, we conclude that the trial judge did' not abuse her discretion in excluding Dr. Liuzza’s proposed expert testimony on causation. And, on that account, we affirm the grant of summary judgment and the dismissal with prejudice' of the plaintiffs’’ lawsuit against Trinity, Continental, Hartford, and Certain Underwriters at Lloyd’s Londom
We turn now to a more complete explanation of our decision.
Ja1
We first briefly review this matter’s procedural history and examine the judgment under review.
Gerald Boudreaux was diagnosed with lung cancer on August 20, 2009, and died on May' 10, 2010. On May 6, 2011, Mr; Boudreaux’s three surviving children filed a petition for wrongful death and survival damages in the Civil District Court for the Parish of Orleans against numerous parties that were, at one time, involved in the distribution, sale and ultimate use of asbestos and asbestos-containing products. Specifically, the Boudreaux family alleges that their -father suffered substantial exposure to asbestos while working at the same shipyard in Harvey, Louisiana, for a sue- *765 cession of owner/employers, between T963 and 2009. The petitions allege that Mr. Boudreaux began work at the Gretna Machine and Iron Works in 1963 as a painter, sandblaster, welder, tacker, and shipfítter. In 1981, Gretna Machine was purchased by Trinity Industries, Inc. In 1997, Trinity transferred ownership of the yard to Halter Marine, which in turn sold it to Bol-linger Shipyards in 2000. Mr. Boudreaux was still working in the shipyard at the time of his 2009 diagnosis.
In 2011, the Boudreaux family brought strict liability claims against Trinity, as successor in interest to Gretna Machine, and Bollinger, as successor in- interest to Halter Marine.[1] The family also sued Trinity’s insurers — Travelers Casualty Land Surety Company, Continental Insurance Company, Employers Mutual Liability Insurance Company of-Wisconsin, Hartford Accident and Indemnity Company, and Certain Underwriters at Lloyd’s London — and designated all of these, along with' Trinity and Bollinger, as “premises defendants.”[2]
Subsequently, Trinity brought two interrelated motions after the conclusion of discovery yet prior to trial. First, Trinity brought a motion in limine that sought to prevent Dr. Liuzza, the Boudreaux ■ family’s expert pathologist, from testifying at trial on the grounds that his opinion regarding medical causation, and the methodology by which he arrived at it, do not satisfy the requirements set- out in the Daubert and Foret cases. See Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L,Ed.2d 469 (1993); State v. Foret, 628 So.2d 1116 (La.1993). Trinity simultaneously filed a motion for summary judgment which asked the trial judge to dismiss the Boudreaux family’s claims against it in the event the trial judge grants its motion in limine.
With respect -to its motion in limine, Trinity argued' that the trial judge should strike Dr. Liuzza’s opinion on medical causation bécause the methodology used in reaching his opinion was flawed in two respects. First, Trinity pointed out that, while he acknowledged. that cigarette smoking is. the leading cause of lung Lcancer, Dr. Liuzza nevertheless did not know about — and thus did not consider— Mr. Boudreaux’s thirty-year history of smoking three packs of cigarettes a day.
■ Next, Trinity noted that Dr. Liuzza formed his causation opinion without any underlying evidence regarding the dosage of asbestos received by Mr. Boudreaux via occupational exposure. In the usual case, Trinity claimed, a plaintiffs pathologist is not qualified to calculate asbestos dosage and so will rely upon the opinion of the plaintiffs industrial hygienist when forming his opinion on causation. In this case, Trinity notes, Dr. Liuzza formed his opin *766 ion without the benefit of an industrial hygienist’s, dosage report, but relied instead upon twenty-five pages excerpted from the. 108-page deposition of Terry Thi-bodeaux, one of Mr. Boudreaux’s co-workers. Based on these excerpts, Dr. Liuzza assumed that Mr. Boudreaux was exposed to asbestos on a near-daily basis. When asked at deposition, however, about various work-related factors that could impact the extent of Mr. Boudreaux’s historical exposure — factors discussed by the coworker in the eighty-three pages of deposition not provided to him — Dr. Liuzza conceded that he would have to defer to an industrial hygienist.
Accordingly, Trinity asserted, Dr. Liuz-za could not credibly testify whether Mr. Boudreaux’s historical exposure to asbestos exceeded any applicable exposure limits. Dr. Liuzza’s opinion that Mr. Boudreaux’s presumed daily exposure to asbestos resulted in lung cancer, Trinity argued, should be excluded because it is not based on any quantifiable evaluation of Mr. Boudreaux’s actual asbestos ^exposure history. Continental, Hartford, and Certain Underwriters at Lloyd’s London moved to : adopt as their own Trinity’s two motions.
In opposing the motion, the Boudreauxs first argued that, contrary to Trinity’s assertion, Dr. Liuzza did consider Mr. Bou-dreaux’s smoking history when formulating his opinion, and pointed in support to this statement from his report: “Most workers in Mr. .Boudreaux’s field are smokers. If Mr. Boudreaux, did in fact also have a significant tobacco exposure, then I would attribute his lung cancer to the combined effects of asbestos and tobacco.” The Boudreaux family . further pointed out that, when confronted by Trin-it/s counsel with the evidence of Mr. Bou-dreaux’s smoking history, Dr. Liuzza altered his opinion during the course of the deposition to conclude that Mr. Bou-dreaux’s lung cancer could be attributed to a combination of asbestos and tobacco. With respect to Trinity’s second argument, the Boudreaux family asserted that no scientific standard required Dr. Liuzza to rely solely upon an industrial hygienist when estimating Mr. Boudreaux’s exposure history. Rather, the Boudreauxs argued that the jurisprudence indicates that Dr. Liuzza was justified in relying solely upon the twenty-five pages of deposition extracts provided to him by counsel.
At the subsequent August 7, 2015 motion hearing, the trial judge was not persuaded by the Boudreaux family’s arguments and, instead, granted Trinity’s motion in limine. After excluding Dr. Liuzza, the trial judge then granted Trinity’s motion for summary judgment on the grounds that the Boudreaux family could no longer prove causation. The trial judge, accordingly, signed a judgment on August |717, 2015, which granted Trinity’s two motions and dismissed with prejudice the Boudreaux family’s claims against Trinity, Continental, Hartford, and Certain Underwriter’s at Lloyd’s London. The Boudreaux family then filed a notice of intent to seek supervisory writs on the trial judge’s exclusion of Dr. Liuzza’s testimony from trial. The Boudreaux’s writ application was timely lodged with this Court on September 4, 2015. Similarly, the Bou-dreaux family also brought a motion for new trial which asked the trial judge to reconsider her judgment that granted Trinity’s motion for summary judgment. After a hearing, the trial judge denied the new trial motion on October 15, 2015. The Boudreaux family then filed a motion for devolutive appeal seeking review only of the trial court’s August 17, 2015 judgment. Before their appeal was lodged, however, yet after we learned from the parties that the trial *767 judge had denied the Boudreaux family’s motion for new trial, we ordered, that the Boudreaux family’s writ application be consolidated with their anticipated appeal of the trial judge’s dismissal with prejudice of their claims against Trinity.
II '
In this Part, we address first.the Boudreaux family’s contention that the trial judge committed legal error in failing to conduct a detailed Daubert-Foret analysis on the record at the motion hearing in contravention of Article 1425 F(2) of the Louisiana Code of Civil Procedure. Specifically, Article 1425 F(3) provides in pertinent part that if the ruling of the court is made at the conclusion of the hearing— which is what happened in this case — the court shall recite orally its findings of |sfact, conclusions of law, and reasons for judgment. Because of this alleged failure, the Boudreaux family contends, we must review the admissibility of Dr. Liuzza’s expert testimony de novo. See Palumbo v. Shapiro, 11-0769, p. 12 (La.App. 4 Cir. 12/14/11), 81 So.3d 923, 930 (“where one or more trial court legal errors interdict the fact-finding process ..., and, if the record is otherwise complete, the appellate court should make its own independent de novo review of the record to determine a preponderance of the evidence.”). We disagree.
We note that the trial judge did explain on the record her reasons for excluding Dr. Liuzza’s testimony. While her comments were relatively brief, she concluded that Dr. Liuzza’s failure to consider Mr. Boudreaux’s thirty-year history of smoking three packs of cigarettes a day, his family medical history, and the remainder of Mr. Thibodeaux’s deposition to be so divergent from scientific medical practice as to render his methodology unreliable. While better judicial practice suggests that the trial judge in this case could have been more detailed in her-oral reasons, we need not conclude today whether the reasons given violate by brevity- the letter of Article 1425 F(3). This is so because the Boudreaux family does not explain how the trial: judge’s failure to provide detailed findings and reasons after excluding Dr. Liuzza’s expert testimony somehow interdicted her already concluded analysis. Accordingly, we decline to conduct a de novo review of the trial judge’s ruling.[3]
Ji11
We next examine the Boudreaux family’s contention that the trial judge erred when she granted Trinity’s motion in limine and excluded Dr. Liuzza’s expert opinion testimony. The Boudreaux family properly preserved this issue for our review by introducing into evidence copies of Dr. Liuzza’s report and deposition. See La. C.C.P. art. 1636; La. C.E. art. 103 A(2) (error may not be predicated upon a ruling which excludes evidence unless a substantial right of the party is affected and the substance of the evidence was made known to the court by counsel). Cf. Hightower v. Schwartz, 14-0431, p. 9 (La.App. 4 Cir. 10/15/14); 151 So.3d 903, 907 (we “will not consider an assignment of error "which complains about the exclusion of testimony or other evidence when the party failed to make its proffer or offer of proof.”).
A
We now consider the methodology employed by Dr.- Liuzza. The Boudreaux family introduced no live testimony at the hearing, but instead relied upon several exhibits: 1) Dr. Liuzza’s report; 2) four pages from his discovery deposition; 3) an *768 affidavit signed by Dr. Liuzza-for purposes of the motion hearing; 4) a copy of Mr. Thibodeaux’s deposition; 5) Dr. Robert N. Jones’ report[4]; and, 6)-copies of two scholarly artides-Consensus Report, Asbestos, Asbestosis, and Cancer: The Helsinki Criteria for Diagnosis and Attribution, 28 Scand. J. Work Environ. Health 311-316 (1997); Consensus Report, Asbestos, Asbestosis, and \ wCancer, The Helsinki Criteria for- Diagnosis and Attribution 2014,: Recommendations, 41(1) Scand. J. Work Environ. Health 6-15 (2014).[5]
Dr. Liuzza’s methodology is reflected in his report, his deposition, and an affidavit sworn for purposes of the motion hearing. ■ In his report, authored several years after Mr. Boudreaux died, Dr. Liuzza sets out the materials that were provided to him by the Boudreaux family: 1) medical records from West. Jefferson Medical Center; 2) a Louisiana death certificate; 3) twenty-five pages from Mr. Thibodeaux’s deposition; 4) five .microscopic slides from the West Jefferson Medical Center comprising im-munohistorical stains and controls; and 5) two paraffin tissue blocks from Delta Pathology.[6] - Dr. Liuzza next briefly summarized Mr. Boudreaux’s exposure and medical histories. Although he , admitted that he was never given any medical records from a physician who treated Mr. Bou-dreaux in a clinical setting, Dr.. Liuzza concluded that Mr. Boudreaux had “an employment history of significant exposure to asbestos-containing products.” He based this upon information contained in that portion of Mr. Thibodaux’s deposition which was provided to him:
Mr. Terry Thibodeaux ... stated that he and Mr. Boudreaux worked in barges on boilers and associated pipes that were insulated with asbestos-containing materials. This work involved removal of insulation and then performing of repairs. The insulation was said to have been reinstalled by a separate company. - Insulation removal was described as both cutting and breaking off the insulation in pieces. Mr. Thibodeaux said, “When you’d like break it, it would be like all dust in a pile. When you take it off, it was stuck on there.” At some | ntimes actual scraping off of the insulation was said to have been necessary.
Mr. Thibodeaux said that they performed work like the above with “rages” on their faces from approximately 1966 until 1970. After that, they'were given dust masks. Mr. Boudreaux was said to have performed this type of work without respiratory protection for “five or six years.”
Mr. Boudreaux, Dr. Liuzza noted, was diagnosed with lung cancer in August of 2009. His examination of the slides and tissue samples taken from Mr. Bou-dreaux’s body indicated the presfence of cancerous cells but showed rio signs of asbestos-induced changes to the lungs. He, thus, admitted that: “In this case the pathology materials are inadequate for a pathologic determination of asbestos exposure. Therefore one must rely on the asbestos exposure history. I would refer you to in [sic ] industrial hygienist in this regard.[7] The use of history of exposure *769 is legitimate provided it is obtained -by proper, thorough methods by someone- expert in the area.” Dr. Liuzza nevertheless related the lung cancer to Mr. Boudreaux’s asbestos exposure: “In summary, it is my opinion that Mr. Gerald Boudreaux had a significant occupational asbestos exposure, developed a bronchiogenic carcinoma, and later died from this cancer, I believe,this cancer to have been causally related,, at least in part, to Mr. Boudreaux’s occupational asbestos exposure. Therefore, I would view his death from lung cancer as also causally related to his asbestos exposure.” ■ ,
1 ^.Observing finally that “[m]ost workers in Mr. Boudreaux’s field are smokers, Dr. Liuzza admitted that he was provided with no information about Mr. Boudreaux’s possible tobacco exposure. He nevertheless stated that [i]f Mr. Boudreaux did in fact also have a significant tobacco exposure, then I would attribute his lung cancer,-to the combined effects of asbestos and .tobacco.” Referring to it as “synergism” or “a multiplicative effect,” he explained that a person “with both a significant asbestos exposure and a significant tobacco expor sure faces a risk of developing bronchiog-enic carcinoma that ranges from forty-five to ninety times that of the population not exposed to either of these two agents.”
He reiterated these opinions in his affidavit and cited to two attached scholarly articles in support: Consensus Report, Asbestos, Asbestosis, and Cancer: The Helsinki Criteria for Diagnosis and Attribution, 23 Scand. J. Work Environ. Health 311-316 (1997); Consensus Report, Asbestos, Asbestosis, and Cancer, The Helsinki Criteria for Diagnosis and Attribution 201⅛: Recommendations, 41(1) Scand. J. Work Environ. Health 5-15 (2014). The two articles both contain the following statement concerning the interplay of tobacco and asbestos in causing lung cancer: “Although tobacco smoking affects -the total lung cancer risk, this effect does not detract from the risk of lung cancer attributable to asbestos exposure. No attempt has been made in this report to apportion the relative contributions of asbestos exposure and tobacco smoking.” Dr. Liuzza’s methodology for attributing Mr. Bou-dreaux’s lung cancer to asbestos exposure is | ^therefore premised entirely upon -his reading of Mr. Thibodeaux’s deposition testimony.
B
Under the standards set forth in Daubert, adopted by the Louisiana Supreme Court in Foret, the trial court is required to perform a “gatekeeping” function to “ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable.” Daubert, 509 U.S. at 589, 113 S.Ct. 2786. Repudiating the former “general acceptance” standard, the Daubert Court, held that the Federal Rules of Evidence control the admissibility of expert scientific evidence in federal court. Finding that the Louisiana Code of Evidence was modeled after the Federal Rules of Evidence, our Supreme Court adopted the requirements set forth in Daubert. See Foret, 628 So.2d at 1122.
The general rule governing the admissibility of expert testimony in Louisiana courts is found in La. C.E. art. 702. “A witness who is qualified as an expert by-knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if” four conditions are satisfied. Id. (emphasis added). The *770 first, and critical, inquiry is that “[t]he expert’s scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue.” La. C.E. art. 702(1); see State v. Farrier, 14-0623, p. 7 (La.App. 4 Cir. 3/25/15), 162 So.3d 1233, 1239 (“By explicitly finding that the opinion testimony of Dr. McAuliff would only serve to confuse the jury, the trial judge answered the critical question that this testimony would not be helpful and | ^excluded the testimony.”). The other three conditions are pertinent to a Dau-bert-Foret inquiry conducted by the trial judge qua gatekeeper: “[La. C.E. art. 702](2) The testimony is based on sufficient facts or data; (3) The testimony is the product of reliable principles and methods; and (4) The expert has reliably applied the principles and methods to the facts of the case.” In civil proceedings, the Daubert-Foret pretrial hearing is one “to determine whether a witness qualifies as an expert or whether the methodologies employed by such witness are reliable under Articles 702 through 705 of the Louisiana Code of Evidence.” La. C.C.P. art. 1425 F(l). And, notably, the party demanding such a pretrial hearing and determination of the reliability of evidence which the opposing party intends to introduce into evidence at the trial “shall set forth sufficient allegations showing the necessity for these determinations by the court.” La. C.C.P. art. 1425 F(l) (emphasis added). Upon a timely filed and sufficiently alleged motion for a Daubert-Foret hearing, the court “shall” hold a contradictory hearing. La. C.C.P. art. 1425 F(2).[8] “At the hearing, the court shall consider the qualifications and methodologies of the proposed witness based upon the provisions of Articles 104(A) and 702 through 705 of the Louisiana Code of Evidence.” Id.
Thus, in exercising her gatekeeping function, a trial judge must make a “preliminary assessment of whether the reasoning or methodology underlying the 11stestimony is scientifically valid and of whether that reasoning and methodology properly can be applied to the facts in issue.” Daubert, 509 U.S. at 592-593, 113 S.Ct. 2786. Importantly, if the gatekeep-ing role is not properly executed, there is a risk that the expert evidence may be prejudicial or misleading; trial judges must therefore employ “a careful evaluation of the methodology surrounding the testimony and its conclusions.” Foret, 628 So.2d at 1122.
Clearly, scientific opinion testimony on causation is relevant to a suit seeking recompense for the contraction of asbestos-related lung cancer. As to the reliability of such expert opinion testimony, pertinent factors for the trial court to consider include: 1) the “testability” of the scientific theory or technique; 2) whether the theory or technique has been subjected to peer review and publication; 3) the known or potential rate of error; and 4) whether the methodology is generally accepted in the scientific community. See Daubert, 509 U.S. at 594-595, 113 S.Ct. 2786; see also State v. Quatrevingt, 93-1644, p. 11 (La.2/28/96), 670 So.2d 197, 204.
C
It is well-established that the trial court is afforded wide discretion in de *771 termining whether expert testimony should be admitted and who ■ should or should not be qualified as an expert. See General Elec. Co. v. Joiner, 522 U.S. 136, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997). A trial court’s decision to qualify an expert will not be overturned absent an abuse of discretion. See Cheairs v. State ex rel. Dept. of Transp. & Dev., 03-0680, p. 6 (La.12/3/03), 861 So.2d 536, 541. See also Everhardt v. Louisiana Dept. of Transp. and Dev., 07-0981, p. 15 (La.App. 4 Cir. 2/20/08), 978 So.2d 1036, 1048 (“Whether an expert meets the qualifications of .an expert witness and the competency of the expert witness to testify in specialized areas is within the sound discretion of the trial court.”). Jouve v. State Farm Fire and Cas. Co., 10-1522, p. 6 (La.App. 4 Cir. 8/17/11), 74 So.3d 220, 225 (“A trial court’s decision to qualify an expert will not be overturned absent an abuse of discretion.”).
The abuse-of-discretion standard is highly deferential to the trial judge’s determination under consideration. See LCR-M Ltd. P’ship v. Jim Hotard Prop., L.L.C., 13-0483, p. 9 (La.App. 4 Cir. 10/9/13), 126 So.3d 668, 675. An abuse of discretion generally results from a.conclusion reached capriciously or in an arbitrary manner. See Tugwell v. Plaquemines Parish Gov’t, 14-0657, p. 5 (La.App. 4 Cir. 11/19/14), 154 So.3d 695, 699. “Arbitrary or capricious” means the absence of a rational basis for the action taken. See A.S. v. D.S., 14-1098, p. 17 (La.App. 4 Cir. 4/8/15), 165 So.3d 247, 257. And a court necessarily abuses its discretion if its ruling is based on an erroneous view of the law. See Show & Tell of New Orleans, L.L.C. v. Fellowship Missionary Baptist Church, 14-0843, p. 8 (La.App. 4 Cir. 12/17/14), 156 So.3d 1234, 1240.
Having reviewed the record, we discern no abuse of discretion in the exclusion of Dr. Liuzza’s expert opinion testimony. Here, the trial judge excluded Dr. Liuzza’s testimony from trial after concluding that his- failure to consider Mr, Boudreaux’s thirty-year history of smoking three packs of cigarettes a day, family medical history, and the remainder of Mr. Thibodeaux’s deposition to be so divergent from scientific medical practice as to render his methodology unreliable: |17“Ms. Donahue, I’m just trying to understand, if that’s all an expert has to do is to look at a few pages. Is that the scientific method or is that the method , that we use for establishing whether or not an individual is an expert?”
The Boudreaux family members, however, assert that while he did not know the details of Mr. Boudreaux’s smoking history, Dr. Liuzza did consider it a possibility and opined that if it was shown that Mr. Boudreaux was a smoker then the combined synergistic effects of tobacco and asbestos put him at a higher risk of developing lung cancer than if he had only been exposed to one of the substances. And the Boudreaux family members point out that Dr. Liuzza did in fact ask their attorneys for information concerning Mr. Bou-dreaux’s past medical history and tobacco use.' They admit, however, that he was told by their attorneys that he was provided with all pertinent records in their possession.
The Boudreaux family members, therefore, appear to urge the reversal of Dr. Liuzza’s exclusion on the grounds that his apparent methodological errors should have been attributed to their own failure to provide him with relevant medical information. While we disagree with the proposition that the trial judge’s ruling should be reversed on these grounds, we observe that the Boudreaux family offered no evidence or testimony — save Dr. Liuzza’s own — to substantiate the reliability of Dr. Liuzza’s opinions. For example, Dr. Liuz- *772 za claimed in his affidavit that his approach to determining “the significance of an exposure ,.. [is] accepted in the medical and scientific communities.” Similarly, he also claims that his approach here — the “review of medical records and pathology specimens to provide a |1smedical diagnosis” — is identical to the procedure employed by him in his purely medical, out-of-court practice. However, the Bou-dreaux family offered no independent evidence to substantiate these claims.[9]
Dr. Liuzza also claims in his affidavit: “My opinions as well as the materials and methodology relied upon are generally accepted in my field of anatomic, clinical, and forensic pathology. These are all the types of materials that I and other pathologists normally reiy upon to render our opinions.” However, the Boudreaux family offered no evidence to substantiate Dr. Liuzza’s claims that the methodology employed by him in this case is also used by those professionals practicing in the fields of anatomic, clinical, or forensic pathology. No professional practicing in these fields testified verbally or by way of affidavit that the methods employed by Dr. Liuzza are reflective of the methodology generally employed in their profession. The record, moreover, is devoid of evidence as to the types of methods and ' materials relied upon by other pathologists to render opinions on disease causation.
11flDr. Liuzza also notes in his affidavit that he is “qualified, as a pathologist familiar with pertinent literature on the causes and diagnosis of lung cancer, to opine that an exposure such as Mr. Boudreaux’s'is significant.” In support of these claims, Dr. Liuzza appended to his affidavit a list of eleven scholarly books and articles. Aside from the two Consensus Reports mentioned earlier, however, the Boudreaux family did not offer into evidence copies of the scholarly works referenced by Dr. Liuzza in his affidavit. As for the two articles actually introduced into evidence, we observe that far from substantiating his “synergistic” theory ábout the interplay of tobacco and asbestos, the two Consensus Reports merely observe: “Although tobacco smoking affects the total lung cancer risk, this effect does not detract from the risk of lung cancer attributable to asbestos exposure.” While we stake no position on the scientific propriety of Dr. Liuzza’s “synergistic” theory, we observe candidly that it is not supported at all by the two pieces of scholarly literature offered into evidence by the Boudreaux family at the Daubert-Foret hearing. An enquiring mind might find it substantiated within the pages of the other scholarly articles referenced by Dr. Liuzza. The Boudreaux family, however, did not introduce these articles into evidence and we are prohibited *773 from taking judicial notice of their contents. See Wallace v. Kaiser Aluminum & Chem. Corp., 586 So.2d 149, 150 (La.1991) (“On the other hand, the court of appeal erred in taking judicial notice of the adjudicative fact that asbestosis and lung cancer in the same person are necessarily causally related. A | ¡^judicially noticed fact must be one not subject to reasonable dispute. La.Code of Evidence, art. 201.”).
Simply put, the Boudreaux family did not meet its burden of establishing the reliability of Dr. Liuzza’s methodology. Given the dearth of substantiating evidence in the record, we conclude that the trial judge did riot abuse her discretion in granting Trinity’s motion in limine and excluding the expert opinion testimony of Dr.' Liuzza from trial.[10]
IV
In this Part, we turn to consider the correctness of the trial judge’s granting of the motion for summary judgment in favor of Trinity.
A
In light of the issues before us, and the nature of summary judgment proceedings, we think it important to briefly establish the parties’ respective burdens of proof in the event this case were to proceed to trial. Here, the Boudreaux family advances wrongful death and- survival claims, which are tort-based causes of action, for damagés stemming from asbestos exposure in the workplace. See La. Civil Code arts. 2315.1 and 2315.2; Taylor v. Giddens, 618 So.2d 834, 840 (La.1993). The Boudreaux family’s petitions assert a strict liability claim against Trinity and the other, premises defendants for damages stemming from Mr. Boudreaux’s workplace exposure to asbestos-containing products. See |2iLa. Civil Code art. 2317. Before a defendant can be cast in judgment under Article 2317, “the plaintiff must prove that: 1) the thing which caused damage was in the defendant’s custody and control (garde); 2) the thing had a vice or defect which created an unreasonable risk of harm; and 3) the injuries were caused by a defect.” Tsegaye v. City of New Orleans, 15-0676, p. 12 (La.App. 4 Cir. 12/18/15), 183 So.3d 705, 714, writ denied, 16-0119 (La.3/4/16), 188 So.3d 1064 (quoting Chaplain v. Dimitri, 14-1081, p. 6 (La.App. 4 Cir. 8/5/15), 174 So.3d 222, 226). Additionally, Article 2317.1 “adds the requirement that the injured plaintiff prove that the owner/custodian knew or, in the exercise of reasonable care, should have known of the unreasonable risk of harm, and that the damage could have been prevented by the exercise of reasonable care, and that [the owner/custodian] failed to exercise such reasonable care.” Id. (internal quotations omitted).
In addition to strict liability, the Boudreaux family’^ petitions also assert negligence claims against the premises defendants and Trinity’s executive officers for their respective failures to provide respiratory protection, clean air, protective clothing, and clean water to Mr. Bou-dreaux. See La. Civil Code arts. 2315 and 2316/ The plaintiff in all negligence actions has the burden of proving by a preponderance of the evidence the following five elements: 1) duty of care owed by the defendant to the plaintiff; 2) breach of that duty by the defendant; 3) cause-in- *774 fact; 4) legal causation; and 5) damages to the plaintiff caused by that breach. See Serou v. Touro Infirmary, 12-0089, pp. 18-19 (La.App. 4 Cir. 1/9/13), 105 So.3d 1068, 1084, vacated in part by Serou v. Touro Infirmary, 12-0089 (La.App. 4 Cir. 1/28/13), 129 So.3d 540. Notably for our purposes, under either negligence or strict liability the Boudreaux family must prove that the negligent act or defect complained of was a cause-in-fact of the injury.[11] See Thibodeaux v. Asbestos Corp. Ltd., 07-0617, pp. 11-12 (La.App. 4 Cir. 2/20/08), 976 So.2d 859, 866.
B
We apply a de novo standard of review in examining trial court rulings on summary judgment motions. See Lewis v. Young, 15-0798, p. 3 (La.App. 4 Cir. 2/24/16), 187 So.3d 531, 535. In reviewing such judgments, appellate courts utilize the same criteria that govern the trial court’s consideration of whether 12!isummary judgment is appropriate: whether there is a genuine issue of material. fact and whether the mover is entitled to judgment as a matter of law. See Brennan’s Inc. v. Colbert, 15-0325, p. 25 (La.App. 4 Cir. 4/13/16), 191 So.3d 1101, 1115, p. 11. A court must grant a motion for summary judgment if the pleadings, depositions, answers to interrogatories, and admissions, together with the affidavits, if any, show that thei'e is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law. See La. C.C.P. art. 966 B; Rapalo-Alfaro v. Lee, 15-0209, p. 8 (La.App. 4 Cir. 8/12/15), 173 So.3d 1174, 1179.
On a motion for summary judgment, the burden of proof remains with the movant. See La. C.C.P. art. 966 C(2). If the moving party will not bear the burden of proof on the issue at trial, however, and points out that there is an absence of factual support for one or more elements essential *775 to the adverse party’s claim, action, or defense, then the non-moving .party must produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial. See La. C.C.P. art. 966 C(2). If the opponent of the motion fails to do so, there is no genuine issue of material fact and summary judgment should be granted. See La. C.C.P. art. 966 C(2).
C
Here, the Boudreaux family members at a trial on the merits would bear the burden of proof with respect to each of the elements comprising their various causes of action. See Lasha v. Olin Corp., 625 So.2d 1002, 1005 (La.1993). |24Trinity’s motion for summary judgment focuses exclusively upon the Boudreaux family’s inability to prove the cause-in-fact element common to both sets of negligence and strict liability claims. In order to establish that his alleged asbestos exposure was a cause-in-fact of the claimed injuries, the Boudreaux family must show that: 1) Mr. Boudreaux’s workplace exposure to asbestos was significant; and, 2) that this exposure caused or was a substantial factor in bringing about his lung cancer. See Oddo v. Asbestos Corp. Ltd., 14-0004, p. 11 (La.App. 4 Cir. 8/20/15), 173 So.3d 1192, 1202. Causation, as we have previously noted, is the “ ‘premier hurdle’ faced by plaintiffs in asbestos litigation.” Torrejon v. Mobil Oil Co., 03-1426, p. 18 (La.App. 4 Cir. 6/2/04), 876 So.2d 877, 890 (quoting Brian M. DiMasi, Comment, The Threshold Level of Proof of Asbestos Causation: The “Frequency, Regularity and Proximity Test” and a Modified Summers v. Tice Theory of Burden-Shifting, 24 Cap. U.L.Rev. 735, 738-741 (1995)). Their failure to establish this individual element — as would be their failure to establish' any individual element of any cause of action — is fatal to the Boudreaux family members’ negligence and strict liability-based causes of action. See Vodanovich v. A.P. Green Indus., Inc., 03-1079, pp. 5-6 (La.App. 4 Cir. 3/3/04), 869 So.2d 930, 933-934.
As we have noted in the context of non-asbestos cases, “expert medical testimony is required when the conclusion regarding medical causation is one that is not within- common knowledge.” Serou, 12-0089, p. 31, 105 So.2d at 1091 (citing Chavers v. Travis, 04-0992, p. 10 (La.App. 4 Cir. 4/20/05), 902 So.2d 389, 395). Here, the Boudreaux family members do not contend that they can prove the causation element via reference to common knowledge, circumstantial evidence, or the so-called Housley presumption. See Williams v. Stewart, 10-0457, pp. 6-7 (La.App. 4 Cir. 9/22/10), 46 So.3d 266, 272.[12] The family members, instead, concede that Dr. Liuzza was, in their own words, “[p]laintiffs’ only medical. causation expert.” The Boudreaux family, thus, admits that absent the testimony of Dr. Liuzza, they cannot establish that Mr. Boudreaux’s asbestos exposure was a cause-in-fact of his lung cancer. See La. Civil Code art. 1853 (“A judicial confession is a declaration made by a party in a judicial proceeding. That confession constitutes full proof against the party who made it. A judicial confession is indivisible and it may be revoked only on the ground of error of fact.”);- Chapital v. *776 Harry Kelleher & Co., Inc., 13-1606, p. 13 (La.App. 4 Cir. 6/4/14), 144 So.3d 75, 86. The Boudreaux family members, therefore, have failed to establish that they can meet their burden of proving an element essential to both their negligence and strict liability causes of action. , The record, accordingly, is devoid of any genuine issue of material fact to try with respect to the medical causation of Mr. Boudreaux’s lung cancer. Given the Boudreaux family’s inability to meet the applicable burdens of proof at trial, we conclude that the trial judge was legally correct when she granted Trinity’s motion for summary judgment and dismissed with prejudice lanthe Boudreaux family’s claims against Trinity, Continental, Hartford, and Certain Underwriters at Lloyd’s London.
DECREE
We affirm the trial court’s judgment of August 17, 2015, which dismissed with prejudice all claims of Dwayne Boudreaux, Gerilyn Cook, and Bryan Boudreaux, individually and as proper parties in interest for Gerald Boudreaux, against Trinity Industries, Inc., Continental Insurance Company, Hartford Accident and Indemnity Company, and Certain Underwriters at Lloyd’s London.
AFFIRMED

. The Boudreauxs also named several asbestos manufacturers, supply companies, former executive officers of Gretna Machine, and their respective insurers as parties’ defendant. The record before us indicates that the. Bou-dreaux family’s claims against some of these defendants were dismissed prior the rendition • of the judgment under review. In light of the fact that the Boudreaux family designated only a portion of the trial court's record for appeal, we cannot ascertain whether Trinity and its insurers are the remaining defendants at suit or whether other defendants .remain. See La. C.C.P. art. 2128 ("However, within three days, exclusive of holidays, after taking the appeal the appellant may designate in a writing filed with tile trial court such portions of the record which he desires to constitute the record on appeal.”).

. On April 29, 2013, the Boudreaux family dismissed without prejudice their claims against Employers Mutual'Liability Insurance Company of Wisconsin-. Similarly, the Bou-dreaux family dismissed without prejudice their claims against Travelers Casualty and Surety Company on August 2, 2013.

. We discuss the applicable abuse of discretion standard in Part III — C infra.

. Dr. Jones is a medical expert who prepared a report for Trinity.

. The 2014 Consensus Report is an update of the 1997 paper.

. Of all the items comprising these five categories, the only one introduced into evidence at the Daubert-Foret hearing were the pages from Mr. Thibodaux’s deposition.

. Dr. Liuzza explained that an industrial hygienist can be utilized to “analyze asbestos levels in the workplace by various test methods and workplace visits.” Trinity asserts that the Boudreaux family has retained an *769 industrial hygienist in this case but that this expert's opinion was not introduced into evidence or, apparently, provided to Dr. Liuzza.

. It appears that all that is required for "sufficient allegations” under La. C.E. art. 1425 F are those which challenge the expert’s methodology as unreliable and allege that the expert testimony does not satisfy the requirements set forth in Daubert and Foret. See, e.g., Robertson v. Doug Ashy Bldg. Materials, Inc., 10-1552, pp. 26-30 (La.App. 1 Cir. 10/4/11), 77 So.3d 339, 357-60; Arceneaux v. Shaw Group, Inc., 12-0135, p. 4 (La.App. 1 Cir. 9/24/12), 103 So.3d 1086, 1089.

, The Boudreaux family, on the other hand, did introduce the report of Trinity’s expert medical witness, Dr. Henry. Unlike Dr. Liuz-za, Dr. Henry's methodology focused largely upon a review of Mr: Boudreaux's family, medical, and smoking histories. He also reviewed five years' worth of Mr. Boudreaux’s chest x-rays. Like Dr. Liuzza, Dr. Henry detected no signs of asbestosis or pleural plaques in the medical evidence provided to him, Unlike Dr. Liuzza, however, Dr. Henry refused to; attribute Mr. Boudreaux’s lung cancer to. his alleged asbestos exposure: "An absolute requirement for the diagnosis of asbestosis, along with the evidence of significant asbestos exposure, is sound evidence of diffuse lung fibrosis.. If none is shown on adequate radiographic studies, or if asbestosis is not found on examination of suitable tissue, then the particulars of the exposure history become immaterial.” In this case, Dr. Henry stated that "Mr. Boudreaux’s radiographs do not show interstitial lung disease of any sort— nor even a pleural plaque.” The presence of pleural plaques on lung tissue, he noted, is clinically significant “as a marker of exposure to fibrous minerals, 20 or more years earlier.” Dr. Heniy, accordingly, attributed Mr, Bou-dreaux's lung cancer to past cigarette smoking.

. We emphasize, however, that under the abuse-of-discretion standard our decision is necessarily deferential to the trial judge’s case-specific ruling, Our decision does not necessarily foreclose the admission (in another case) of Dr. Liuzza’s expert testimony if the proponent of his testimony properly establishes that, his methodology is generally accepted in the relevant scientific community.

. In Kent v. Gulf States Utilities Co., 418 So.2d 493, 497 (La.1982), the Supreme Court characterized the difference between negligence and strict liability causes of actions for liability for things in our custody:
In a typical negligence case against the owner of a thing (such as a tree) which is actively involved in the causation of injury, the claimant must prove that something about the thing created an unreasonable risk of injury that resulted in the damage, that the owner knew or should have known of that risk, and that the owner nevertheless failed to render the thing safe or to take adequate steps to prevent the damage caused by the thing. Under traditional negligence concepts, the knowledge (actual or constructive) gives rise to the duly to take reasonable steps to protect against injurious consequences resulting from the risk, and no responsibility is placed on the owner who acted reasonably but nevertheless failed to discover that the thing presented an unreasonable risk of harm.
In a strict liability case against the same owner, the claimant is relieved only of proving that the owner knew or should have known of the risk involved. The claimant must still prove that under the circumstances the thing presented an unreasonable risk of harm which resulted in the damage (or must'prove, as some deci-1 sions have characterized this element of proof, that the thing was defective). The resulting liability is strict in the sense that the owner’s duty to protect against injurious consequences resulting from the risk does not depend on actual or constructive knowledge of the risk, the factor which usually gives rise to a duty under negligence concepts. Under strict liability concepts, the mere fact of the owner's relationship with and responsibility for the damage-causing thing gives rise to an absolute duty to discover the risks presented by the thing in custody. If the owner breaches that absolute duty to discover, he is presumed to have discovered any risks presented by the thing in custody, and the owner accordingly will be held liable for failing to take steps to prevent injury resulting because the thing in his custody presented an unreasonable risk of injury to another. (Italics in original.)

. "In meeting the burden of proving causation, a plaintiff may be aided by a presumption of causation if before the accident the plaintiff was in good health, but subsequent to the accident the symptoms of the disabling condition appear and those symptoms continuously manifest themselves afterward providing that the evidence establishes a reasonable possibility of causal connection between the accident and the disabling condition.” Williams, 10-0457, p. 6, 46 So.3d at 272.