| SHERRY PATRICK | * | NO. 2022-C-0550 |
|---|---|---|
| VERSUS | * | |
| | | COURT OF APPEAL |
| CENTER FOR RESTORATIVE | * | |
| BREAST SURGERY, LLC, ET | | FOURTH CIRCUIT |
| AL. | * | |
| | | STATE OF LOUISIANA |

* * * * * * *

APPLICATION FOR WRITS DIRECTED TO
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2019-10903, DIVISION "F-14"
Honorable Jennifer M Medley,
* * * * * *
**Chief Judge Terri F. Love**
* * * * * *

(Court composed of Chief Judge Terri F. Love, Judge Sandra Cabrina Jenkins, Judge Dale N. Atkins)

M. H. Gertler
Louis L. Gertler
Helen H. Babin
GERTLER LAW FIRM
935 Gravier Street, Suite 1900
New Orleans, LA 70112

      COUNSEL FOR RELATOR

Conrad Meyer
Walter R. Woodruff
CHERHARDY, SHERMAN, WILLIAMS, MURRAY,
RECIILE, STAKELUM & HAYES, L.L.P.

      COUNSEL FOR RESPONDENTS

**WRIT GRANTED; JUDGMENT REVERSED**

**SEPTEMBER 2, 2022**

*TFL*

*SCJ*

*DNA*

This is a medical malpractice action. Relator/Plaintiff, Sherry Patrick, seeks supervisory review of the trial court's July 19, 2022 judgment which granted the *Daubert* motion/*motion in limine* of Respondents/Defendants, Center for Restorative Breast Surgery LLC, St. Charles Surgical Hospital, LLC, Dr. Christopher Trahan, Dr. William Karly Ordoyne, and Dr. Scott Sullivan (collectively, "Respondents"), to exclude the testimony of Relator's expert, Dr. Joni Maga. Dr. Maga based her conclusion that Respondents' treatment of Relator was outside the standard of care based on representations made by Relator's husband, Dr. John Patrick. Dr. Patrick, an anesthesiologist, stated that he observed that Respondents had maintained Relator's blood pressure at elevated levels during her surgery. In granting the motion, the trial court opined that Dr. Maga's methodology in reaching her conclusions was flawed in that she relied on the representations of Relator's physician husband versus the hospital medical records, noting that the hospital medical records did not document any elevated blood pressure findings.

The trial court made a credibility determination of the reliability of a fact witness, Dr. Patrick, in excluding Dr. Maga as an expert witness. The reliability

1

of a fact witness is a credibility determination reserved for the trier of fact. Accordingly, we grant Relator's writ application and reverse the judgment.

## FACTUAL AND PROCEDURAL HISTORY

On July 31, 2017, Relator was admitted to St. Charles Surgical Hospital, which houses the Center for Restorative Breast Surgery, for a prophylactic nipple sparing bilateral mastectomy with immediate breast reconstruction. Relator, a breast cancer survivor, underwent the procedure as a preventive measure against the recurrence of the breast cancer. Dr. William Ordoyne performed the mastectomy. Dr. Christopher Trahan, assisted by Dr. Scott Sullivan, M.D., performed the breast reconstruction. Dr. Melvin Triay, M.D was the anesthesiologist for the operation.

Relator's husband, Dr. Patrick, a board certified anesthesiologist, was permitted to observe a portion of the surgery. Dr. Patrick was present strictly as an observer and was not a part of the surgical team. Dr. Patrick stated that during the procedure, he observed that Relator's blood pressure was maintained at a hypertensive level of "180/105." After the operation, Relator experienced a permanent vision loss which she attributed to the elevated blood pressure.

Relator filed a malpractice complaint to the Patients Compensation Fund pursuant to La. R.S. 40:1231.1 on July 10, 2018, against Respondents, Dr. Triay, the anesthesiologist for the operation, as well as members of the hospital staff. Relator's malpractice claim before the Medical Review Panel ("MRP") was premised, in substantial part, on Dr. Patrick's observation of sustained hypertensive blood pressure during surgery. In denying the complaint, the MRP did not consider Dr. Patrick's elevated blood pressure observations. The MRP made the following findings:

2

Dr. Triay did not deviate from the standard of care required of him. The records do not indicate that there was an extended period of time during which Mrs. Patrick's systolic blood pressure was greater than 180.

Relator filed a petition for damages ("Petition") on October 16, 2019. In the Petition, Relator reiterated her claim that "blood pressure was sustained at approximately 180/105 by the utilization of different pressors (ephedrine and neosynephrine) for an extended and excessive period during the surgery." Relator averred, in pertinent part, that Respondents failed to meet the applicable standard of care "[b]y maintaining Mrs. Patrick's blood pressure at a sustained high-level during surgery, causing permanent vision loss in the left eye and putting remaining retinal tissue at risk in both eyes."

In support of her allegations, Relator retained Dr. Joni Maga, a board certified anesthesiologist and licensed physician in the State of Florida. Dr. Maga reviewed Relator's medical records and Dr. Patrick's affidavit in which he attested "that the monitor read 180 systolic over 105 diastolic" during Relator's surgery. Based on Dr. Patrick's observation, Dr. Maga concluded that Plaintiff's blood pressure was "50% higher than baseline for at least over 30 minutes." Thereafter, Dr. Maga opined:

> It is inappropriate and outside of the standard of care to maintain blood pressures in this range even if requested by the surgeon. This elevation of blood pressure in a normotensive person can be considered a hypertensive crisis and a medical emergency in itself due to the consequent increase risk of stroke and end organ damage.

Prior to filing the present *motion in limine*, Respondents brought a motion for summary judgment. The summary judgment motion, in part, sought dismissal of the Petition by raising credibility arguments against Dr. Patrick. The trial court denied the motion for summary judgment. As to Respondents' challenge to Dr.

3

Patrick's credibility, the trial court noted that "Louisiana jurisprudence has long established summary judgment is improper if the Court has to make a credibility determination, as a determination of that nature is reserved for the trier of fact."

Thereafter, Respondents filed a *Daubert* motion/motion in *limine* to exclude the testimony of Dr. Maga. Respondents argued, in pertinent part, that Dr. Maga's opinion was based on an unreliable methodology, namely, on the observation of a fact witness, Dr. Patrick. Respondents also argued that Dr. Maga was not qualified to testify regarding the appropriate standard of care for a breast reconstructive surgery because she is an anesthesiologist.

Relator's opposition to the motion contended that there was no flaw in Dr. Maga's methodology because, in forming her opinion, she reviewed the medical records and Dr. Patrick's sworn testimony. Relator also contended that as an anesthesiologist, Dr. Maga was qualified to offer an opinion regarding the standard of care as to the control of a patient's blood pressure levels during surgery. Relator attached excerpts of Dr. Patrick's deposition testimony as an exhibit. These excerpts referenced Dr. Patrick's testimony that he had conversations with Dr. Trahan and Dr. Triay about Relator's low baseline blood pressure levels during the actual surgery. The excerpts included the following:

> Q. Did you have any conversations with either Dr. Triay or the CRNA regarding the anesthesia as it presented to you at the moment?
>
> A. No, not to them. Because remember when I first glanced, it was just the nurse anesthetist.
>
> I looked over at Chris [Dr. Trahan] and said, "Man, you really push up blood pressures here."
>
> And he said, "Yeah. You know, we're worried about"—we're worried about the perfusion of the flap."

4

I said, "Well, you know, her baseline pressure is pretty low.  She usually runs anywhere between 105 to 120/60 to 70.  We always use twenty percent as a margin on this.  You guys don't do that?

He said, "No."  We really need to make sure the flap is perfused."

And then you're right.  Dr. Triay came in.  And I asked him, "You guys usually do this."

"We do it all the time."

I said, ""You don't ever have any problems with this?"

He said, "No."

And I said, "Okay."

And I'm looking and looking and looking, and he keeps bumping her with the ephedrine, and the neo drip is still going.

About half hour, forty minutes, I said, "We're still at sustained hypertension.  And I asked Chris again.  I said, "Ya'll keep it this high all the time, really?"

He says, "Yeah, it's never a problem."

I said, "Okay."

Dr. Maga testified at the *motion in limine* hearing to exclude her testimony. She acknowledged that her opinion that it was below the standard of care to allow Relator's blood pressure to go fifty percent higher than her baseline for over thirty minutes was based solely on Dr. Patrick's observations.  Dr. Maga also admitted that Dr. Patrick's observations conflicted as to what was contained in the Relator's medical records.  When questioned by Respondents' counsel, Dr. Maga explained her decision to rely on Dr. Patrick's observations over the medical records as follows:

Q.  Okay.  Would you agree, Dr. Maga, that an eyewitness is less reliable than a certified medical record?

A.  No.

Q. Why not?

A. A handwritten medical record can be unreliable.

Q. Well, the question was is would you agree that an eyewitness is less reliable than a certified medical record?

A. My answer is the same. No, I don't agree.

Q. And why, again? I'm sorry.

A. I think that a written medical—so there are automated medical anesthesia records that come directly from the monitor. Those are reliable. What's on the monitor gets automatically put into the medical record. But otherwise, if somebody has to look at the monitor, interpret what they see and then chart it—sometimes, it's not done in real-time, sometimes, it's done, you know, every half an hour or every 15 minutes, and you can fill in the blanks. So it can be just— it can be inaccurate.

And as far as an eyewitness, Dr. Patrick is an eyewitness, but he's an eyewitness with a trained eye. So I have no reason to believe that what he saw wasn't what he saw. So, I can't say that the eyewitness report of Dr. Patrick is less accurate than the medical record—which is also a human record by what somebody saw.

At the conclusion of the hearing, the trial court granted the *motion in limine* to exclude Dr. Maga as an expert witness. The trial court noted that even though Dr. Maga was "very qualified," "her methodology is flawed." The trial court espoused the following:

Now, I find Dr. Maga to be very qualified, but I find that her methodology is flawed and that her reliance on what he [Dr. Patrick] told her versus the record and his role as, you know the husband in this situation. I think that's a flawed methodology in this situation that we have.

I mean, it's an unusual circumstance to have the husband in the OR, but this is where we find ourselves. You know, I think she's qualified. I think she's got great credentials and she's done wonderful things, but I'm going to grant the motion in limine in this case.

Relator timely filed the present writ application.

6

**DISCUSSION**

In her sole assignment of error, Relator argues that the trial court erred in excluding the expert testimony of Dr. Maga based upon its own credibility judgment of a fact witness, Dr. Patrick. Relator asserts that the trial court improperly decided to believe the handwritten medical records which did not reflect any sustained elevated blood pressure levels over Dr. Patrick's sworn affidavit and deposition testimony that Relator's blood pressure levels were elevated during the surgery. Relator argues that such a credibility determination should have been left to the jury or the fact finder; as such, the trial court erred in excluding Dr. Maga's expert testimony. We agree.

This Court has held that "[e]videntiary rulings of a trial court are reviewed under an abuse of discretion standard." *Becnel v. Northrop Grumman Ship Systems, Inc.*, unpub., 2009-0982, p.1, (La. App. 4 Cir. 9/28/09), 2009 WL 5667696 at *1 (citing *Vaughn v. Progressive Sec. Ins. Co.*, [20]03-1105, p. 3 (La. App. 3 Cir. 3/2/05), 896 So.2d 1207, 1213)). The abuse of discretion standard is highly deferential to the trial court's determination under consideration. *Boudreaux v. Bollinger Shipyard*, 2015-1345, p. 16, (La. App. 4 Cir. 6/22/16), 197 So.3d 761, 771 (citing *LCR–M Ltd. P'ship v. Jim Hotard Prop., L.L.C.*, [20]13–0483, p. 9 (La. App. 4 Cir. 10/9/13), 126 So.3d 668, 675). An abuse of discretion generally results from a conclusion reached capriciously or in an arbitrary manner. *Boudreaux*, 2015-1345, p. 16, 197 So.3d at 771 (citing *Tugwell v. Plaquemines Parish Gov't*, [20]14–0657, p. 5 (La. App. 4 Cir. 11/19/14), 154 So.3d 695, 699). "[A] trial court abuses its discretion if its ruling is based on an erroneous view of the law." *Boudreaux*, 2015-1345, p. 16, 197 So.3d at 771 (citing *Show & Tell of*

*New Orleans, L.L.C. v. Fellowship Missionary Baptist Church*, [20]14–0843, p. 8 (La. App. 4 Cir. 12/17/14), 156 So.3d 1234, 1240).

The admissibility of expert testimony is governed by Article 702 of the Louisiana Code of Evidence, which provides in pertinent part:

A. A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(1) The expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(2) The testimony is based on sufficient facts or data;

(3) The testimony is the product of reliable principles and methods; and

(4) The expert has reliably applied the principles and methods to the facts of the case [emphasis added].

The standard for determining whether a witness is qualified to testify in a matter as an expert is governed by *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), as adopted by the Louisiana Supreme Court in *State v. Foret*, 628 So.2d 1116, 1121 (La. 1993). The Supreme Court in *Daubert* required a "preliminary assessment [by the trial court] of whether the reasoning or methodology underlying the [expert's] testimony is scientifically valid…." *Id.* at 592-593, 113 S.Ct. at 2796. "[T]he factual basis for an expert's opinion determines the reliability of the testimony…." *Giavotella v. Mitchell,* 2019-0100, p. 16 (La. App. 1 Cir. 10/24/19), 289 So.3d 1058, 1071-1072, *writ denied,* 2019-01855 (La. 1/22/20), 291 So.3d 1044.

In the case *sub judice*, the trial court accepted Dr. Maga's qualifications as an expert witness. The trial court's challenge to the "methodology" employed by Dr. Maga emanated from Dr. Maga's reliance on Dr. Patrick's observations that

Respondents maintained Relator's blood pressure at a hypertensive level during surgery which contradicted the findings in the medical records. We find the trial court's exclusion of Dr. Maga as an expert witness on that basis does not go to methodology, but rather, amounts to a determination of Dr. Patrick's credibility. As noted by Relator, "[t]he rule that questions of credibility are for the trier of fact applies to the evaluation of expert testimony unless the stated reasons of the expert are patently unsound." *See Marshall v. Air Liquide-Big Three, Inc.*, 2011-0990, p. 19 (La. App. 4 Cir. 9/7/12), 107 So.3d 13, 19 (quoting *Lirette v. State Ins. Co.*, 563 So2d 850, 853 (La. 1990). As referenced herein, Dr. Maga provided sound reasons for her reliability on Dr. Patrick's observations over that of the hospital's certified medical records. She specifically noted that hand-written medical records may be unreliable. Accordingly, as noted by the trial court in its denial of Respondents' motion for summary judgment, a determination regarding the issue of the credibility of Dr. Patrick's observations versus that of the findings of the hospital medical records is one that should be decided by the trier of fact at the trial on the merits.

## CONCLUSION

Based on the foregoing, we find that the trial court abused its discretion in granting Respondents' motion to exclude Dr. Maga as an expert witness. Accordingly, we grant Relator's writ application and reverse the judgment.

**WRIT GRANTED; JUDGMENT REVERSED**