PAUL A. BONIN, Judge.
1¶ Arlington C. Tugwell seeks review of a decision rendered by the Plaquemines Parish Civil Service Commission affirming the disciplinary action — a five-day suspension — imposed upon him by the Plaque-mines Parish Government for causing a preventable accident that resulted in damage to a Parish owned dump truck. We note at the outset, however, that Mr. Tug-well does not deny the occurrence of the underlying accident, or that it was preventable. Rather, Mr. Tugwell argues that his - punishment was excessive and merits modification. For the reasons that follow, we affirm.
I
In this part'we discuss the facts underlying the Parish’s disciplinary action. The accident at issue occurred on the morning of Friday,. February 14, 2014. At this time, Mr. Tugwell was employed by the Plaquemines Parish Government as a Truck Driver II. Mr. Tugwell’s supervisor, Robert Jackson, instructed Mr. Tug-well to have his dump truck serviced in preparation for a job that was set to begin on the following Monday. Mr. Tugwell’s dump truck was parked tightly |2between two other trucks in the Parish’s vehicle yard. Mr. Jackson suggested to Mr. Tug-well that he first move one of the other trucks in order to make space for him to then move his own dump truck to where it could be serviced. Mr. Tugwell disregarded Mr. Jackson’s advice, ignored the other two trucks, and instead slowly maneuvered his dump truck out from between the trucks and into the service area. After his dump truck was serviced, Mr. Tugwell attempted to return it to its prior position by backing it into place between the two other trucks. On returning, however, Mr. Tug-well backed his dump truck into one of the adjacent trucks and damaged one of his vehicle’s side-view mirrors. It cost the Parish $263.00 to repair the broken mirror and resulted in the dump truck being out of service for several days.
Having found the accident to be preventable, the Parish issued Mr. Tugwell a written notice and suspended him for five days without pay in accordance with its Preventable Accidents/Incidents Policy. Specifically, the Parish enacted the policy on August 6, 2012, in response to an increasing number of backing-up accidents and rear-end collisions. The Parish’s written Policy statement explains its purpose accordingly:
The number of preventable accidents/incidents occurring each week is steadily increasing costing PPG [Plaque-mines Parish Government] thousands of dollars. The money spent on these accidents has a negative impact on PPG’s annual budget. Each dollar spent repairing a third party’s vehicle, a PPG unit that has been damaged by another PPG unit or on a third party bodily injury claim is one less dollar available to spend to provide services to Plaque-mines Parish citizens. While it is understood that accidents happen, many of the recent cases have been preventable, avoidable accidents which occurred thru operator error.
LThe Policy then sets out the consequences for its violation:
From this point forward, any employee who is involved in a preventable backing accident or preventable rear end collision is subject to be counseled by *698 his/her superintendent and given 5 days off without pay. (Emphasis added.)
Mr. Tugwell was given a written copy of this policy and signed a statement on August 14, 2012, verifying that he had read it and understood its terms.
In connection with this policy, the Parish issued Mr. Tugwell a written notice on February 14, 2014, informing him that he was being given a five-day suspension to begin on February 17, 2014. Mr. Tugwell timely moved to appeal his suspension by filing a petition of appeal on February 28, 2014. Mr. Tugwell was then given a hearing before the Plaquemines Parish Civil Service Commission on April 16, 2014. At the hearing, the Parish introduced exhibits and elicited testimony from Mr. Tugwell, Mr. Jackson, and Wanda Buras, the Parish’s Human Resources Manager. Mr. Tugwell represented himself at the hearing, questioned the other witnesses, made a statement on his own behalf, and submitted to cross-examination. In short, Mr. Tugwell did not dispute the occurrence of the underlying accident, or whether it was preventable. Rather, Mr. Tugwell challenged only the severity of his penalty, contending that the nature of the accident warranted a lesser punishment. The Commission took the matter under advisement and denied Mr. Tugwell’s appeal by way of written findings issued on May 29, 2014. Mr. Tugwell then timely appealed the Commission’s findings to this Court.
Ji.II
The appointing authority — the employer of an employee in the classified civil service — is charged with the operation of its department, and it is within its discretion to discipline an employee for sufficient cause.[1] See La. Const. art. X, § 8(A); Lapene v. Department of Police, 11-0902, p. 3 (La.App. 4 Cir. 1/25/12); 81 So.3d 998, 1000. “Cause” for dismissal or discipline of such a person includes conduct prejudicial to the public service involved or detrimental to its efficient operation. See Bannister, 95-0404, p. 8, 666 So.2d at 647; Walters v. Department of Police, 454 So.2d 106, 113 (La.1984). The appointing authority has the burden of proving the impairment by a preponderance of the evidence. See La. Const. Art. X, § 8(A); Lapene, 11-0902, p. 3, 81 So.3d at 1000.
Based on the facts presented, a commission determines whether the appointing authority has good or lawful cause for taking disciplinary action and, if so, whether the punishment imposed is commensurate with the dereliction. See La-pene, 11-0902, pp. 3-4, 81 So.3d at 1000. The commission has a duty to decide independently from the facts presented whether the appointing authority has a good | fior lawful cause for taking disciplinary action and, if so, whether the punishment. im *699 posed is commensurate with the dereliction. See Walters, 454 So.2d at 113.
Appellate courts reviewing civil service disciplinary cases are presented with a multifaceted review function. See Bannister, 95-0404, p. 8, 666 So.2d at 647; Walters, 454 So.2d at 113. Initially, deference should be given to the factual conclusions of the civil service commission. See Mathieu, 09-2746, p. 5, 50 So.3d at 1262. A reviewing court should apply the clearly wrong or manifest error rule prescribed generally for review of a commission’s factual findings. See Bannister, 95-0404 at 8, 666 So.2d at 647; Walters, 454 So.2d at 113. Then, the court must evaluate the commission’s imposition of a particular disciplinary action to determine if it is both based on legal cause and is commensurate with the infraction; the court should not modify the commission’s order unless it is arbitrary, capricious, or characterized by an abuse of discretion. See Bannister, supra; Walters, 454 So.2d at 114. “Arbitrary or capricious” means the absence of a rational basis for the action taken, while an “abuse of discretion” generally results from a conclusion reached capriciously or in an arbitrary manner. See Mathieu, 09-2746, p. 5, 50 So.3d at 1263.
Ill
Here, Mr. Tugwell does not contest the Commission’s factual finding that he caused the underlying accident or that it was preventable. Rather, Mr. Tugwell asserts that the discipline imposed upon him—which was based upon the Parish’s Preventable Accidents/Incidents Policy— was excessive and that the Commission | f,erred in upholding his five-day suspension. Mr. Tugwell argued, instead, to the Commission that his punishment should be based on Section 27, Section 1 of the Parish’s Safety Manual, which provides that “corrective disciplinary action ranges from an oral warning up to termination.” The Commission, however, denied Mr. Tug-well’s appeal in light of “the policy in effect at the time of the accident and the damage to Appellant’s truck.” We agree, and conclude that Mr. Tugwell’s five-day suspension stemming from the February 14, 2014 accident was based on legal cause and commensurate with the infraction. We now explain our opinion in more detail.
We note first that the record establishes that the Parish’s discipline of Mr. Tugwell was based on legal cause. The Commission expressly found that Mr. Tug-well’s “accident could easily have been prevented if [he] had moved the adjacent vehicle according to the discussion he had had with his superior.” It further found that this “was an avoidable accident which the policy was designed to eliminate.” The Commission observed that Mr. Tugwell “chose to move his vehicle without taking a reasonable precaution, and must bear the consequences of his decision.” The Commission also found that it cost the Parish $263.00 to repair the broken mirror on Mr. Tugwell’s dump truck and that the dump truck was out of service for several days while awaiting the mirror’s repair. Clearly, the Commission was correct in concluding that Mr. Tugwell’s actions—which resulted in the expenditure of public monies to repair the broken mirror and a loss of vehicle service hours—constituted conduct that was both prejudicial to the public | yservice and detrimental to its efficient operation. See, e.g., Davis v. Department of Police, 590 So.2d 850 (La.App. 4th Cir. 1991), which upheld a police officer’s fifteen-day suspension for causing a preventable automobile accident. The Commission, therefore, correctly concluded that Mr. Tugwell’s discipline was based on legal cause.
We also conclude that the Commission correctly found that the discipline im *700 posed by the Parish upon Mr. Tugwell was commensurate with his dereliction. Noting that the policy at issue came about as a result of “numerous accidents where parish vehicles had been involved in avoidable accidents,” the Commission found that “these accidents had exposed the Parish to serious liability and involved litigation in court.” The Commission also found that “[i]n an attempt to reduce avoidable accidents, the parish instituted a written policy, dated August 6, 2012, where employees would be disciplined with a five-day suspension if they were at fault in an avoidable accident.”
Ms. Buras testified before the Commission that since the policy had been in force, preventable accidents had been greatly reduced. Ms. Buras also stated that the policy was applied uniformly to all employees, and that several employees had been disciplined with five-day suspensions for causing avoidable accidents. In his testimony, Mr. Jackson recalled three to four other employees who had received a five-day suspension for causing avoidable accidents. The evidence presented to the Commission, therefore, showed that the Parish applied the policy at issue consistently and uniformly.
| ^Having reviewed the record, it is clear to us that Mr. Tugwell’s actions fall directly within the ambit of the Parish’s Preventable Accidents/Incidents Policy. Mr. Tugwell’s accident was both preventable and of a type sought to be addressed by the Parish’s policy. Moreover, Mr. Tug-well’s actions forced the Parish to expend funds to repair the damage caused by the accident, and resulted in several days of lost use of the dump truck. Clearly, the Parish’s disciplining of Mr. Tugwell was neither arbitrary, capricious, or an abuse of discretion. See, e.g., Harris v. Department of Police, 08-0503 (La.App. 4 Cir. 2/11/09); 6 So.3d 225, where this Court upheld a police officer’s thirty-day suspension for causing a second preventable automobile accident. We, accordingly, conclude that the Commission correctly found that Mr. Tugwell’s discipline was commensurate with the infraction.
DECREE
The decision of the Plaquemines Parish Civil Service Commission upholding the Plaquemines Parish Government’s disciplining of Arlington C. Tugwell is affirmed.
AFFIRMED

. Civil service provisions in the state constitution and the rules of the civil service commission are designed to protect career public employees from political discrimination by eliminating the "spoils” system. See La. Const. art. X, § 1, et seq.; Mathieu v. New Orleans Public Library, 09-2746, p. 4 (La. 10/19/10); 50 So.3d 1259, 1262. "Equally as important as protection of the employees is the appointing authority’s duty to undertake disciplinary action against an employee for legal cause that impairs the efficiency of the public service.” Mathieu, 09-2746, p. 5, 50 So.3d at 1262. See also Sumling v. Department of Health, 14-1423 (La. 11/7/14); 152 So.3d 134. "Just as great an injustice may arise from suffering the continuance of incompetent or insubordinate classified civil service employees in their positions as from wrongfully terminating the permanently classified civil service employee.” Mathieu, 09-2746, p. 4, 50 So.3d at 1262. Both concerns are fundamental to the purpose of the civil service merit system. See Bannister v. Department of Streets, 95-0404, p. 7 (La. 1/16/96); 666 So.2d 641, 646.