Judge Terrel Broussard, Pro Tempore
|TThe defendant-appellant and “Appointing Authority”, the New Orleans Fire Department (“NOFD”), appeals a decision of the Civil Service Commission (“Commission”) dated July 7, 2016, in favor of the plaintiff-appellee, Daniel Hampton, ordering the NOFD to restore any back pay and emoluments related to his emergency suspension on July 2, 2013. For the following reasons, we hereby affirm the Commission’s ruling.
FACTS AND PROCEDURAL HISTORY
Mr. Hampton was a Firefighter with status as a permanent employee in the NOFD. On May 24, 2016, the Commission rendered a decision that granted in part Mr. Hampton’s appeal challenging an emergency suspension, and denied in part his appeal regarding the subsequent termination. [1] On June 1, 2016, NOFD requested a rehearing solely on the Commission’s decision to reverse the emergency suspension arguing that there is no procedural requirement for a pre-j ¡.disciplinary hearing regarding an emergency suspension,[2] *113 The Commission granted NOFD’s motion for rehearing, but affirmed its decision that NOFD owed back pay and emoluments related to the emergency suspension of Mr. Hampton on July 2, 2013. In its well-written reasons attached to the July 7, 2016 judgment, the Commission stated, in pertinent part:
On August 19, 2013, Appellant [Mr. Hampton] received notice from NOFD that it was terminating his employment due to Appellant’s failure to improve his performance following a 90-day review period. This notice also informed Appellant that NOFD was “still awaiting the results of [Appellant’s] July 2, 2013 drug test.” On August 28, 2013, Appellant attended a pre-termination meeting during which members of NOFD’s senior leadership addressed Appellant’s poor performance and subsequent failure to improve.
By NOFD’s own account, the pre-ter-mination meeting was Appellant’s “opportunity to address [his] work performance.” The pre-termination meeting was focused on Appellant’s work performance and NOFD did not address the July 2, 2013 drug test and instead focused on Capt. Howlers special report and Civil Service Rules regarding service ratings. The Commission also notes that, at the time of the August 28th pre-termination meeting, Appellant had presumably served an almost two-month suspension as a result of the July 2nd allegations.
* * *
NOFD argues that there is no requirement for a pre-disciplinary hearing prior to placing an employee on an emergency suspension. However, La. R.S. § 33:2181 requires that, prior to the issuance of discipline, all fire employees be afforded specific due process protections. There is no distinction or exception for emergency suspensions contained within the statute or case law interpreting the statute. The only way NOFD can argue that it was not required to provide Mr. Hampton with an opportunity to respond to the allegations related to his July 2, 2013 drug test prior to placing Mr. Hampton on an emergency suspension is to allege that the emergency |ssuspension was not discipline. NOFD cannot take this position given that Appellant was prevented from reporting to work and was not paid. Indeed, NOFD acknowledged that Appellant’s emergency suspension was in fact discipline during its presentation.
NOFD relies upon this Commission’s Rules in support of its argument that a pre-disciplinary hearing is only required when a classified employee is being considered for termination. However, this Commission’s decision was not based on a violation of its Rules, but upon a violation of La. R.S. § 33:2181.
NOFD next argues that it provided Appellant with written notice — via July 9, 2013 letter to Appellant — of NOFD’s investigation prior to commencing a formal investigation. First, such a notice is only part of the due process required by § 33:2181. Second, this notice came one week after Appellant’s emergency suspension had already begun.
NOFD’s reliance on the Louisiana Civil Service Commission’s rules is misplaced. The State’s current rules define discipline only as “suspension without pay,” SCS Rule 12.3. The state repealed its rules regarding emergency suspensions cited by the City in its brief to the Commission. Now, the State’s rules allow for an emergency suspension without pay only when an employee is under criminal investigation. (Footnote omitted). Under the State’s rules, a “suspension” pending an administrative investí- *114 gation must be with pay, and is thus not discipline under the state’s definitions. SCS Rule 12.10(a)-(d). (Emphasis in original)
As the City points out, the Commission found that the NOFD established, by a preponderance of the evidence, that the Appellant reported to work on July 2, 2013 impaired by prescription medication. However, such a finding does- not speak to the procedural soundness of the emergency suspension. (Emphasis in original)
The NOFD is understandably worried about a holding from the Commission that would require a pre-discipline meeting or hearing for any employee in the classified service. However, this decision is governed by state law as opposed to our Rules. Normally, permanent employees in the classified service facing discipline are ^entitled to a “pre-disci-plinary hearing” only when the discipline is termination. Rule IX, § 1.2. On the other hand, La. R.S. § 33:2181 mandates that any fire employee have an opportunity to present witnesses and evidence regarding any allegation prior to the issuance of discipline. Appellant was not provided with this opportunity regarding the July 2, 2013 drug test. NOFD’s argument that Appellant’s civil service hearing represented Appellant’s opportunity to present evidence and call witnesses in connection with the emergency suspension is unavailing since NOFD had already issued discipline at that point.
NOFD now appeals this July 7, 2016 ruling, alleging the following assignment of error: the Commission erred in concluding that a full-blown trial must occur before an impaired firefighter is placed upon emergency suspension — even though the Firefighters Bill of Rights imposes no such requirement and such requirement would be impractical and injurious to the public welfare..
STANDARD OF REVIEW
The review by appellate courts of the factual findings in a Civil Service Commission case is governed by the manifest error or clearly erroneous standard. Bannister v. Dep’t of Streets, 95-0404, p. 8 (La. 1/16/96), 666 So.2d 641, 647. However, when the Civil Service Commission’s decision involves jurisdiction,' procedure and interpretation of laws or regulations, judicial review is not limited to the arbitrary, capricious, or abuse of discretion standard. Instead, on legal issues, appellate courts give no special weight to the findings of the trial court, but exercise their constitutional duty, to review questions of law and render judgment on the record. Russell v. Mosquito Control Board, 06-0346, pp. 7-8 (La.App. 4 Cir. 9/27/06), 941 So.2d 634, 639-40; Banks v. New Orleans Police Dep’t., 01-0859, 01-1302, p. 3 (La. App. 4 Cir. 9/25/02), 829 So.2d 511, 513-14. A legal |serror occurs when a trial court applies the incorrect principles of law and such errors are prejudicial. Banks, 01-0859, 01-1302, at p. 3, 829 So.2d at 514.
DISCUSSION
The only issue before this court is whether Mr. Hampton was entitled to- notice and a pre-suspension opportunity to respond before NOFD placed him on emergency suspension, without pay, on July 2, 2013.
Employees with permanent status in the classified civil service may be disciplined only for- cause expressed in writing. La. Const, art. X, § 8(A). “Cause” for dismissal of such a person includes conduct prejudicial to the public service involved or detrimental to its efficient operation, Disciplinary action against a civil service employee will be deemed arbitrary and capri *115 cious unless there' is a real and substantial relationship between the improper conduct and the “efficient operation” of the public service. Bannister, 95-0404, at p. 8, 666 So.2d at 647.
The controlling statutory provision in this case is La. R.S. 33:2181, also known as the Firefighters Bill of Rights, which states as follows:
A. Unless context otherwise requires, the following terms when used in this Subpart shall be given the meanings assigned below:
(1) “Fire employee” includes any person employed in the fire department of any municipality, parish, or fire protection district maintaining a full-time regularly paid fire department, regardless of the specific duties of such person within the fire department, and who is under investigation with a view to possible disciplinary action, demotion, or dismissal.
(2) “Interrogation” includes but is not limited to any formal interview, inquiry, or questioning of -any fire employee by |fithe ’ appointing authority or the appoint- - ing authority’s designee regarding misconduct, allegations of misconduct, or policy violation. An initial inquiry conducted by the fire employee’s immediate supervisors shall not be considered an interrogation.
B. Whenever a fire employee is under investigation, the following minimum standards shall apply:
(1) Prior to commencing a formal investigation of a fire employee, the appointing authority shall notify the employee in writing of the nature of the investigation, of the identity and authority of the person conducting such investigation, and of the spéeifíc charges or violations being investigated.
(2) The fire employee being investigated-shall be informed in writing at the commencement of any interrogation of the nature of the investigation, of the identity and authority of the person conducting such investigation, of the identity of all persons present during such interrogation, and of the specific charges or violations being investigated. The fire employee shall be allowed to make notes.
(3) Any interrogation of a fire employee in connection with an investigation shall be for a reasonable period of time and shall allow for reasonable periods for the rest arid personal necessities of such fire employee.
(4) All interrogations of any fire employee in connection with the invésti-gation shall be recorded in full. The fire employee shall not be prohibited from obtaining a copy of the recording or transcript of the recording of his statements, upon submitting a written request to the fire chief.
(5) The fire employee shall be entitled to the presence of his counsel or representative, or both, at any interrogation in connection with the investigation. The fire employee’s ^representative or counsel shall be allowed to -offer advice to the employee and to make statements on the record at any interrogation in the course of the investigation. -
(6) The counsel or representative for the fire employee under investigatiori may call witnesses to testify on the employee’s behalf.
(7)'No statement made by a fire employee during the course of an administrative investigation shall be admissible in a criminal proceeding.
*116 C. No fire employee shall be disciplined, demoted, dismissed or be subject to any adverse action unless the investigation is conducted in accordance with this Sub-part. Any discipline, demotion, dismissal or adverse action of any sort taken against a fire employee without complete compliance with the provisions of this Subpart is an absolute nullity.
NOFD placed Mr. Hampton on an “emergency suspension” due to an allegation that he reported to work on July 2, 2013 impaired by illegal or illicit drugs. In his notice of the emergency suspension, given to him on July 9, 2013, it stated that “this emergency suspension will remain in effect pending the outcome of the July 2, 2013 drug test result. Additional action may be warranted by the department based on the outcome of this test, and based upon further evaluation of your job performance during the review period necessitated by your unsatisfactory service rating.” Although the July 2, 2013 drug test was positive for amphetamines, NOFD acknowledged the fact that Mr. Hampton had a prescription for Adderall in 2012, which could have accounted for the positive test result. On August 19, 2013, the NOFD provided notice that it would “conduct a pre-termination hearing ... on August 28, 2013... to give you [Mr. Hampton] the opportunity to address your work performance, and to make your case for why you should be allowed to | ^continue your employment.” On September 17, 2013, NOFD notified Mr. Hampton of its decision to terminate his employment based on deficiencies in his work performance; The Superintendent of the NOFD, Timothy McConnell, testified at the Commission hearing regarding whether Mr. Hampton was terminated for the July 2, 2013 drug test or for poor performance, and stated as follows:
Q. All right. So he’s [Mr. Hampton] suspended on July 2, 2013, based on the drug test; is that right?
A. Right.
Q. And eventually the drug test comes back and he’s positive for amphetamine, right?
A. In July, yes.
Q. So did the second drug test play a part in the termination?
A. The behavior that led to the drug test played a role in his termination. The fact that he was incoherent by . several supervisors looked at him, evaluated him and determined that he was incapable of doing his job, that led to a drug screening. That was taken into consideration not the results of the drug test.
If they [sic] were something that was worthy of discipline, I’d have probably taken further action based on the drug test. But the fact that he was unable to do his job and it led them to think that something was wrong, that certainly was taken into consideration.
Although the record indicates that a hearing was held with respect to Mr. Hampton’s failure to meet his performance standards, it does not reflect that Mr. Hampton was provided with a hearing regarding his emergency suspension, without pay, due to the alleged drug use. Moreover, the record supports the fact that it was not Mr. Hampton’s positive drug test for amphetamines from July 2, |n2013 that contributed to NOFD’s decision to terminate his employment; rather, it was his poor performance and inability to meet performance standards.
The purpose of hearings is to prevent arbitrary disciplinary decisions and unfounded suspensions or terminations. Under these facts, we agree with the Commission that NOFD violated La. R.S. *117 33:2181, which mandates that any fire employee “shall be entitled to the presence of his counsel or representative, or both, at any interrogation in connection with the investigation... and shall be allowed to offer advice to the employee and to make statements on the record at any interrogation in the course of the investigation,” when it suspended Mr. Hampton without pay on July 2, 2013. Further, Mr. Hampton was denied his right under La. R.S. 33:2181 to “call witnesses to testify on the employee’s behalf’ regarding the alleged drug charge on July 2, 2013.
This Court held in Tugwell v. Plaquemines Parish Government, 14-0657, p. 4 (La.App. 4 Cir. 11/19/14), 154 So.3d 695, 698, that suspension without pay constitutes discipline under La. Const, art. X, § 8(A) when it affirmed the disciplinary action of a five-day suspension without pay imposed upon Mr. Tugwell for causing a preventable accident that resulted in damage to a Parish owned dump truck. Likewise, the First Circuit in King v. Dep’t. of Transp. and Dev., 607 So.2d 789, 792 (La. App. 1st Cir. 1992) also found a disciplinary action consisting of a sixty-day suspension without pay would adequately serve to deter any future misconduct and thus, was not excessive and unusual punishment. Therefore, NOFD violated Mr. Hampton’s basic due process rights as required under La. R.S. 33:2181 when it disciplined Mr. Hampton by suspending him without pay. Because the state civil service rules authorize suspension with pay pending investigation under CSC Rule 12.10(a)-(b), the simple solution would Imhave been to suspend Mr. Hampton with pay and proceed with its discipline based on his alleged failure to meet performance standards.
For these reasons, we hereby affirm the Commission’s judgment in granting Mr. Hampton’s appeal in regard to the July 2, 2013 emergency suspension without pay, and its ruling that NOFD remit to Mr. Hampton all back pay and emoluments related to his time on suspension.
AFFIRMED

. The Commission combined Mr. Hampton's two appeals involving the emergency suspension and subsequent termination into one matter.

. The parties are not appealing the portion of the Commission’s ruling denying Mr. Hampton’s appeal of his termination.