NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

17-335

RAGEN H. BOREL

VERSUS

JAMES I. BOREL

**********

APPEAL FROM THE
SIXTEENTH JUDICIAL DISTRICT COURT
PARISH OF IBERIA, NO. 129,221-C
HONORABLE KEITH RAYNE JULES COMEAUX, DISTRICT JUDGE

**********

ULYSSES GENE THIBODEAUX
CHIEF JUDGE

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Sylvia R. Cooks, and Shannon J. Gremillion, Judges.

AFFIRMED.

Diane Sorola
402 W. Convent Street
Lafayette, LA 70501
Telephone: (337) 234-2355
COUNSEL FOR:
    Plaintiff/Appellee - Ragen H. Borel

Lucretia Pecantte
P. O. Box 9010
New Iberia, LA 70562-9010
Telephone: (337) 374-1202
COUNSEL FOR:
    Defendant/Appellant - James I. Borel

**THIBODEAUX, Chief Judge.**

Ragen H. Borel, pro se, filed a petition for protection from abuse against her estranged husband, James I. Borel. At the conclusion of the proceedings, the trial court granted the petition and issued an order of protection in Mrs. Borel's favor. Mr. Borel now appeals that judgment. Finding no abuse of discretion in the trial court's issuance of the protective order, we affirm.

I.

**ISSUES**

The court must decide:

> whether the trial court erred in granting [Mrs. Borel]'s Petition for Protection from Abuse based upon the testimony and lack []of evidence at the trial on the merits.

II.

**FACTS AND PROCEDURAL HISTORY**

The parties were married on May 15, 2009. Two children are issue of the marriage. Mrs. Borel filed a petition for divorce on November 9, 2016. A month later, on December 9, 2016, Mrs. Borel filed the instant petition for protection from abuse pursuant to La.R.S. 46:2131 *et seq*., seeking protection based on a domestic altercation that allegedly occurred between the parties on October 30, 2016. After granting a temporary restraining order in favor of Mrs. Borel, the trial court set the matter for hearing on December 22, 2016.

At the hearing, both parties represented themselves and were the only witnesses. As to the incident, Mrs. Borel testified that the parties were in the New Orleans French Quarter when they became separated around 4:00 a.m. After

looking unsuccessfully for her husband, Mrs. Borel began receiving text messages from him through which she discovered that he had returned to their hotel room without her. Mrs. Borel stated that his text messages revealed that Mr. Borel was agitated and upset with her. Based upon her past experiences with him, she waited to return to the hotel until around 6:00 a.m., "to give him time to cool off." When she entered their room, Mr. Borel initially said nothing, but simply:

> jumped out of bed. The door was still open. He grabbed me by the shoulders and pushed me up against the wall and he said that I had f…ed up, that I wasn't going to get away with this. I yelled for someone to help me and I tried to get out of the door, and he grabbed my throat and held me against the wall and banged my head against the wall several times, and then shut the door. He threw me on the bed and he got on top of me. He held me down by my throat and he hit me on the side of the face.

According to Mrs. Borel, a hotel guest heard her screams and called hotel security. A security guard appeared at their room and asked Mrs. Borel if she had been the one screaming to which Mrs. Borel replied, "Yes." Mrs. Borel recalled that the security guard entered their hotel room and initially spoke with Mr. Borel alone. Thereafter, the security guard asked Mrs. Borel if she wanted to file a police report, yet he discouraged her from doing so by telling her to think about their kids. Mrs. Borel returned to the room and noted that Mr. Borel had calmed down. The next day the parties returned to Lafayette together and began living separate and apart on that day. They have remained apart since then.

When asked by the court if she had any other evidence, Mrs. Borel testified that she had the text messages, pictures of her face, and an examination by her doctor. She did not, however, have them with her.

Mr. Borel then took the stand and recalled that both parties were inebriated when Mrs. Borel disappeared into the crowd on Bourbon Street. He

2

returned to their hotel room when he could not find her. Regarding the altercation, Mr. Borel remembered "hearing the door open and close and she hollered something out at me." Explaining that Mrs. Borel had a history of attacking him while he slept, Mr. Borel then recounted how "she came in and kind of went to attack me. I grabbed her by her arms and restrained her." He could not recall if he grabbed his wife by the throat, but admitted it was a possibility, even though he did not believe that he did because he "didn't see a single bruise on her." Mr. Borel further admitted that he threw his wife on the bed, but could not remember if he got on top of her.

At the conclusion of the hearing, the trial court issued a protective order in Mrs. Borel's favor, directing Mr. Borel to not "abuse, harass, assault, stalk, follow, track, monitor, or threaten" Mrs. Borel. Additionally, the order prohibits Mr. Borel from: (1) going within 100 yards of Mrs. Borel, her residence, or her place of employment; (2) contacting her except as it relates to the welfare or exchange of their children; and (3) damaging her personal property or shutting off her utilities. In granting the protective order, the trial court reasoned:

> I think she's presented evidence to say exactly what you did. You can't rebut that evidence. You said you don't remember if you grabbed her by the throat or anything. I understand there may have been an incident, but I don't want you putting your hands on her.
>
> Likewise, ma'am, if what he says is true, that you've attacked him in the past, he's not going to go around you anymore, so there's no reason for you to go around him except for the exchange of the children.

Thereafter, Mr. Borel timely filed a motion for new trial, which the trial court denied.

III.

## STANDARDS OF REVIEW

Trial courts are granted wide discretion in the issuance of protective orders, which we review under the abuse of discretion standard. *Mitchell v. Marshall*, 02-15 (La.App. 3 Cir. 5/1/02), 819 So.2d 359. This standard is highly deferential to the trial court's determination. *LCR-M Ltd. P'ship v. Jim Hotard Props., L.L.C.*, 13-483 (La.App. 4 Cir. 10/9/13), 126 So.3d 668. Along with erroneous applications of law, "[a]n abuse of discretion . . . generally results from a conclusion reached capriciously or in an arbitrary manner." *Tugwell v. Plaquemines Parish Gov't*, 14-657, p. 5 (La.App. 4 Cir. 11/19/14), 154 So.3d 695, 699.

> The terms "arbitrary and capricious" mean willful and unreasoning action, absent consideration and in disregard of the facts and circumstances of the case. However, when there is room for two opinions, an action is not arbitrary or capricious when exercised honestly and upon due consideration, even though it may be believed an erroneous conclusion has been reached.

*Toups v. City of Shreveport*, 10-1559, pp. 3-4 (La. 3/15/11), 60 So.3d 1215, 1217. Moreover, appellate courts must give deference to a trial court's factual findings when those findings are based on its reasonable credibility evaluations. *Canter v. Koehring Co.*, 283 So.2d 716 (La.1973). "[W]here there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review." *Id.* at 724.

IV.

## LAW AND DISCUSSION

Protective orders are issued in domestic violence matters under the Domestic Abuse Assistance Statute. La.R.S. 46:2131 *et seq.* Pursuant to La.R.S. 46:2135(B):

> If a temporary restraining order is granted without notice, the matter shall be set within twenty-one days for a rule to show cause why the protective order should not be issued, at which time the petitioner must prove the allegations of abuse by a preponderance of the evidence. The defendant shall be given notice of the temporary restraining order and the hearing on the rule to show cause by service of process as required by law within twenty-four hours of the issuance of the order.

Louisiana Revised Statutes 46:2132(3) defines domestic abuse, in pertinent part:

> "Domestic abuse" includes but is not limited to physical or sexual abuse and any offense against the person, physical or non-physical, as defined in the Criminal Code of Louisiana, except negligent injury and defamation, committed by one family member, household member, or dating partner against another.

In support of his argument, Mr. Borel points to the lapse of thirty-nine days between the incident and the filing of the petition as well as the overall lack of medical evidence, photographs, or testimony from any witness regarding the incident. He further notes that Mrs. Borel failed to call the police or file an incident report at the hotel. Mr. Borel also claims that his testimony establishes that he was merely protecting himself when he grabbed Mrs. Borel's arms and threw her on the bed, thus refuting her allegations of abuse. All this, he argues, demonstrates a lack of evidence sufficient to support the issuance of the protective order herein.

5

Mrs. Borel, however, argues that the trial court did not manifestly abuse its extensive discretion in concluding that she was entitled to a protective order. She notes that the trial court was unconcerned at the delay between the incident and the petition and that the parties' own testimony was evidence of the domestic altercation. Although Mrs. Borel concedes that the court was required to address serious issues with only the parties' testimony, she asserts that this is what often occurs in domestic violence situations.

After reviewing the record in its entirety, we find no abuse of discretion in the trial court's decision to grant Mrs. Borel a protective order against Mr. Borel. Although the only evidence consisted of the testimony of the parties, that testimony does reasonably support the trial court's conclusion in that Mrs. Borel testified that Mr. Borel assaulted her by placing his hands on her and throwing her onto the bed. Mr. Borel does not deny intentionally putting his hands on her or throwing her on the bed, but justifies his actions by arguing self-defense. However, his admission, rather than refuting Mrs. Borel's claim, actually supports her allegations.

Moreover, the trial court was in a far better position to evaluate the credibility of these witnesses through its observations of their demeanor and their tone of voice. The trial court actively questioned both of them and clearly found that Mrs. Borel's story was credible. Based on the testimony elicited in response to the pointed questions it asked, the trial court concluded that Mr. Borel more probably than not abused his wife in the manner alleged. In the absence of any objective record evidence contradicting her story, we will not, and further cannot, disturb the trial court's credibility and factual determinations on review. Accordingly, we find that the record in its entirety provides a reasonable basis for

the trial court's decision to grant the protective order and that the trial court, therefore, did not abuse its vast discretion.

## V.

## <u>CONCLUSION</u>

For these reasons, we find no abuse of discretion in the trial court's issuance of the protective order in favor of Mrs. Borel. We affirm the trial court's judgment. Costs of this appeal are assessed to the Defendant/Appellee, James I. Borel.

**AFFIRMED.**

THIS OPINION IS NOT DESIGNATED FOR PUBLICATION.
RULE 2-16.3, UNIFORM RULES—COURTS OF APPEAL.